John P. Girarde – 191518
jgirarde@mpbf.com
Erik P. Weiss – 241453
eweiss@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY, P.C.
88 Kearny Street, 10th Floor
San Francisco, CA  94108-5530
Tel:    (415) 788-1900
Fax:    (415) 393-8087

Attorneys for Defendants, Counter-Claimants, Cross-Claimants, and Cross-Defendants IN SOO OH and CHAN IM OH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TARA HILLS DRIVE LIMITED, a California limited partnership,<br><br>    Plaintiff,<br><br>v.<br><br>DARRYL L. PETKER; SHAUNA M. PETKER; MYONG-POX-HAN; CHAN NAN HAN; PETER H. KIM; IN SOO OH; CHAN IM OH; and DOES 1 through 100, inclusive,<br><br>    Defendants.<br><br>_____<br><br>AND RELATED CROSS-ACTIONS. | Case No.: C-11-06610 EDL<br><br>**NOTICE OF MOTION; STIPULATED MOTION TO STAY IN DEFERENCE TO STATE ADMINISTRATIVE PROCEEDINGS;** ~~PROPOSED~~ **ORDER** AS MODIFIED<br><br>Time: 9:00 a.m.<br>Date: April 8, 2014<br>Courtroom E, 15th Floor<br><br>Chief Magistrate Judge Elizabeth D. Laporte |

## I. NOTICE

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on April 8, 2014, at 9:00 a.m. in Courtroom E on the 15th Floor of 450 Golden Gate Ave. in San Francisco, CA all parties will and hereby do move this Court for an order staying this action for an initial period of six months, and for up to six additional months, in deference to the California Department of Toxic Substances Control ("DTSC"), with lead oversight responsibility over the environmental remediation at 1577 Tara Hills Drive in Pinole, CA ("Property"). A stay is requested to permit the DTSC to perform its regulatory functions with regard to the Property and so the cost of remediation of PCE at the property can be ascertained.

The requested stay was suggested by the court-appointed mediator of this action, J. Daniel Sharp, at a mediation between the Parties held on February 6, 2014 as the best method to permit possible resolution of this matter without trial. Without such a stay, the Parties and Court will waste judicial resources litigating a matter in which damages will remain unknown for some time due to the evolving nature of DTSC oversight and supervision of the cleanup of the Property and associated costs. A stay, such as is being requested, has been deemed appropriate by the United States Supreme Court in *Burford v. Sun Oil Co.* 319 U.S. 315 (1943), and has been granted by judges of this Court under the doctrine of primary jurisdiction in several contexts involving state agencies, including regulation and oversight of similar environmental remediation by DTSC.

This stipulated motion is brought pursuant to Civil L.R. 7-12. While set for hearing per Civil L.R. 7(2)(a), the parties request the Court rule on the motion at its earliest opportunity. The parties waive a hearing, and are willing to provide additional information or briefing if requested. This motion shall be based upon the foregoing notice; the accompanying stipulation of the parties; the accompanying declaration of Marc L. Sherman; the memorandum of points and authorities below; and upon such other documentary or testimonial evidence as may be received in evidence by the Court.

## II. MOTION TO STAY

### A. Introduction

The Parties seek to stay this action for an initial period of six months while PCE remediation proceeds under the jurisdiction of DTSC. If this process has not been resolved at that time, the Parties

request that the stay be extended another six months.  The Parties believe that there is a good chance that the remediation process will be complete at that time since a remediation plan has been developed and is scheduled to be submitted to DTSC in late March.  Accordingly, a stay under the primary jurisdiction doctrine and *Burford* is warranted for the following reasons.

First, DTSC has specialized expertise regarding PCE contamination and final authority and discretion regarding PCE levels and site closure.  A stay will afford the Court the benefit of DTSC's expertise and ensure uniform application of California environmental law and policy.  Primary jurisdiction is a prudential doctrine, and, here, temporarily deferring to DTSC is both prudent and serves the policies underlying the doctrine.

Second, a stay conserves judicial resources and is practical.  Until DTSC completes its regulatory functions and closes the site, the scope and cost of remediation – and thus damages – are unknown; there would be a potential for friction between the Court and DTSC, including inconsistent rulings; and depending on the outcome with DTSC, the complexion of the case could change considerably.  Without a stay, the Court would use its resources to address issues that will largely be resolved through DTSC.  Proceeding with this litigation would needlessly expend resources and judicial economy will be served by a stay.

Third, the Parties have attempted to mediate this matter and, pursuant to the mediator's suggestion, have mutually agreed that resolution of this matter is not possible at this time in light of uncertainty regarding damages.  Because of the difficulty ascertaining the scope of the required environmental remediation needed at the Property without the actual process being underway, the cost of it, and the uncertainty as to what remediation process or processes will be directed and approved by DTSC, little can be accomplished in the litigation until the clean-up process is well underway—or complete.  Both the Parties and the Court will be spinning their wheels and wasting their money—which would be better used to settle this matter—at the present time in light of the uncertainty relating to DTSC's oversight of the remediation process, which, by its nature, is continually evolving.

In terms of timing, DTSC approval for remediation may take 60 days or more, depending upon DTSC's case load, resources, and response time.  While implementation may take as few as 45 days, it may also take much longer, depending on the success of the various alternative stages of the proposed

remediation processes. After each stage, testing will occur, the results of which will then dictate what further action or monitoring, if any, DTSC will require. The Parties, therefore, request a stay for six months, with a status conference set in approximately 150 days. At the status conference, remediation progress can be evaluated along with the likely DTSC outcome. Based upon the progress made, the Court and Parties can evaluate whether a stay for up to six additional months is warranted.

B.     **Relevant Facts**

Plaintiff originally filed this action February 14, 2011 in California state court and it was removed December 22, 2011. The central allegation in the complaint is that Plaintiff Tara Hills Drive Limited ("Tara Hills") has been injured as a result of Perchloroethylene ("PCE") contamination from dry cleaning operations at its property, 1577 Tara Hills Drive in Pinole, CA ("Property"). The suit seeks recovery from the operators of the dry cleaning facility costs associated with PCE, including the costs of cleaning up the Property. Declaration of Marc L. Sherman ("Sherman Decl."), ¶2.

DTSC became the lead agency tasked with oversight of PCE remediation at the Property in 2013. Sherman Decl., ¶4, Ex. 1. It has jurisdiction over hazardous substance cleanups in California under the California Health & Safety Code and pursuant to CERCLA. Cal. Health & Safety Code sections 25300 et seq., 25301(c), 42 U.S.C. § 9604(c)(3); and see *City of Lodi v. Randtron*, 118 Cal. App. 4th 337, 351-352 (2004). In addition, DTSC is empowered under HSAA to, among other things, (a) issue and enforce a removal or remedial action order to any responsible party, (b) impose administrative or civil penalties for noncompliance of an order, and (c) recover costs and expenses incurred in carrying out the Act's mandate. Cal. Health & Safety Code sections 25355.5, 25358.3(a), (f), 25359, 25359.2, 25359.3, 25360.

Here, after years of investigation, clean up at the site became active under DTSC on July 16, 2013. Sherman Decl., ¶4, Ex. 1. On October 31, 2013, Tara Hills entered a Voluntary Cleanup Agreement ("VCA") with DTSC under California Health & Safety Code section 25355.5(a)(1)(c), authorizing DTSC to oversee remediation of PCE. Sherman Decl., ¶4, Ex. 2. According to its website, DTSC has approximately 1,000 scientists, engineers, and specialized support staff to achieve its mission. Sherman Decl., ¶4, Ex. 3. Tara Hills' expert, Paul King, has advised that the cleanup process evolves as it progresses and as more data is obtained during the cleanup. He has also indicated that

- 3 -

DTSC's standards are currently in flux and that due to these and other issues, what is required by the DTSC to clean up the Property may change as the process proceeds. Sherman Decl., ¶5.

On June 25, 2013 the Court ordered the Parties to mediate this matter and thereafter appointed J. Daniel Sharp as mediator. In advance of, and as a part of that mediation process, experts for Tara Hills and Defendants, Cross-Claimants, and Cross-Defendants In Soo Oh and Chan Im Oh (the "Ohs") met to determine if they could agree upon the scope and course of remediation of the Property, as well as the estimated cost thereof. The other defendants did not participate because they did not have experts at that time. At that expert meeting it was determined that there was insufficient data to come to a reasonable estimate of the full cost of remediation or the appropriate remediation methodologies to be used. Sherman Decl., ¶6.

Accordingly, the experts agreed there was the need for the drilling of an additional well (or wells) to test water at the location at which initial tests had showed the highest PCE levels, which drilling would require DTSC approval and oversight. This joint expert opinion was reported to Mr. Sharp who advised that mediation, then scheduled for October 28, 2013, should be postponed because the damages were at the time too uncertain for the mediation to be meaningful. The Parties stipulated and the Court ordered that Mediation be continued until January, 2014 so that data from the new wells could be obtained and analyzed. When results were further delayed, the Court ordered another continuance. Sherman Decl., ¶7.

On January 14, the experts met again and discussed various approaches to remediate the PCE at the Property. The outcome of that meeting was an agreement by Tara Hills to investigate a remediation process proposed by the Ohs' expert, Mr. Warren Chamberlain, which proposal was substantially less expensive than that which Tara Hills' expert, Paul King, was then proposing. Three weeks later, when a mediation involving all parties was held before Mr. Sharp, Tara Hills indicated that, while it had a number of concerns about whether Mr. Chamberlain's plan would ultimately be as successful and inexpensive as Mr. Chamberlain suggested, that it would develop a plan that would propose a version of the plan as a first stage in remediating the site. Sherman Decl., ¶8.

While Mr. Chamberlain has opined that his plan will be completed in about 45 days, Mr. King believes it will take longer. Moreover, since Mr. King does not have the same confidence in the

Notice of Motion; Stipulated Motion To Stay In Deference To State Administrative Proceedings; Proposed Order

1  efficacy and expediency of the plan as does Mr. Chamberlain, Mr. King has developed a plan to submit
2  to DTSC that anticipates stages of remediation, with testing at the completion of each stage to
3  determine if the remediation has been successful and whether DTSC will sign off on the Property and
4  provide a no further action letter. Accordingly, Tara Hills anticipates submitting a remediation work
5  plan to DTSC in late March that may be completed in two to three months—and then perhaps require
6  further monitoring—or it may take a year or more to complete. The timing will depend on whether the
7  site has been cleaned sufficiently at each stage for a DTSC 'all clean' on the Property, something
8  which cannot be predicted without any certainty at this time. Sherman Decl., ¶9.

9       In light of this, while all Parties agreed at mediation that the remediation process proposed by
10 Mr. Chamberlain was desirable, damages were still too uncertain to mediate meaningfully or
11 potentially resolve the matter. Thus the mediator, Mr. Sharp, suggested that the Parties request a stay
12 until the remediation process and DTSC's involvement was well under way. Although all Parties hope
13 that Mr. Chamberlain's plan will be successful and will be approved by DTSC, until at least its first
14 stage is completed, this cannot be known and the amount of damages involved in this case will remain
15 uncertain. Moreover, because of the evolving nature of the remediation process and DTSC's oversight
16 and requirements, until the process occurs, the actual scope and requirements of the remediation is
17 currently unknown, and will remain so for some time. The Parties accordingly all agree that staying
18 this case makes the most sense for all concerned. Sherman Decl., ¶10. A stay will permit DTSC to
19 oversee the remediation and for tests to occur to determine what remediation will be actually required
20 to clean up this Property. Until that time, the Court should abstain from this matter and it should be
21 stayed.

22 **C.  Legal Argument**

23      There appear to be two relevant abstention doctrines conferring discretion to order a stay while
24 DTSC completes its regulatory functions, though the case is properly before the Court: primary
25 jurisdiction and *Burford*.

26      **1.  A Stay Is Warranted Based On DTSC's Primary Jurisdiction**
27      Primary jurisdiction is a prudential doctrine "specifically applicable to claims properly
28 cognizable in court that contain some issue within the special competence of an administrative agency.

Notice of Motion; Stipulated Motion To Stay In Deference To State Administrative Proceedings; Proposed Order

1  It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the
2  parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper* 507 U.S. 258, 268
3  (1993). Both the Ninth Circuit and California courts recognize this doctrine.
4        The Ninth Circuit's formulation of the doctrine is as follows: "[w]hen there is a basis for
5  judicial action, independent of agency proceedings, courts may route the threshold decision as to
6  certain issues to the agency charged with primary responsibility for governmental supervision or
7  control of the particular industry or activity involved…the doctrine applies when 'protection of the
8  integrity of a regulatory scheme dictates preliminary resort to the agency which administers the
9  scheme'". *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. Cal. 1987). The
10 particular factors considered are (1) the need to resolve an issue that (2) has been placed by Congress
11 within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute
12 that subjects an industry or activity to a comprehensive regulatory authority and that (4) requires
13 expertise or uniformity in administration. *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d
14 775, 781 (9th Cir. 2002).
15       The analysis of the primary jurisdiction doctrine as it relates to the state law claims is governed
16 by California law. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000).
17 Under California law, primary jurisdiction "applies where a claim is originally cognizable in the
18 courts, and comes into play whenever enforcement of the claim requires the resolution of issues which,
19 under a regulatory scheme, have been placed within the special competence of an administrative body;
20 in such a case the judicial process is suspended pending referral of such issues to the administrative
21 body for its views." *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 390 (1992) [quoting
22 *United States v. Western Pac. R. Co.* 352 U.S. 59, 63-64 (1956)]. "[T]he primary jurisdiction doctrine
23 advances two related policies: it enhances court decision making and efficiency by allowing courts to
24 take advantage of administrative expertise, and it helps assure uniform application of regulatory laws."
25 *Farmers, supra*, 2 Cal. 4th at 391.
26       In the case at bar, a stay is warranted under both the federal and California formulations of
27 primary jurisdiction. The Court undoubtedly has jurisdiction but preliminary resort to DTSC is
28 appropriate. The DTSC has a legislative mandate and active jurisdiction over the site. A stay would

1  allow the Court to take advantage of DTSC's expertise, and permit a specialized state agency to fulfill
2  its intended role. A stay also assures uniform application of California environmental law and policy.
3  Environmental screening levels for PCE in groundwater and indoor air, for example, are prescribed by
4  state law.[1] Those levels are guidelines only and DTSC must be given latitude to implement California
5  law and policy.

6  Practical considerations also militate in favor of a stay. In environmental matters, remediation
7  cost typically drives litigation. Here, DTSC must make a threshold determination regarding damages,
8  namely, what remediation is sufficient and PCE levels warranting site closure. Until DTSC weighs in,
9  damages will be uncertain and there would be a potential for conflict between the Court and DTSC,
10 including inconsistent rulings. Judicial economy will thus be served by a stay, as the possible
11 outcomes with DTSC will significantly impact the complexion of this case. Without a stay, the Court
12 would be determining facts and issues already largely being handled by DTSC. This Court, of course,
13 would retain jurisdiction over the action. If necessary, after damages are fixed, liability issues could
14 then be litigated.

15 In the Northern District of California, Judge Illston stayed an action under very similar
16 circumstances. *W. Coast Home Builders, Inc. v. Aventis Cropscience USA, Inc.*, 2006 U.S. Dist.
17 LEXIS 48021 (N.D. Cal. July 6, 2006). A home developer in Contra Costa County, West Coast,
18 brought CERCLA and state law claims against defendant landfill operators for contamination of
19 adjacent land. *Id.* at 15-17. Defendants moved to stay the action on primary jurisdiction grounds
20 based upon proceedings taking place before the California Department of Toxic Substances Control.
21 *Ibid.* Specifically, West Coast was in the process of seeking a no further action letter from DTSC; the
22 parties were cooperating with respect to the regulatory process; and the parties hired a consultant and
23 submitted a proposed work plan with specific timelines to DTSC. *Ibid.* Defendants argued the
24 possible outcomes with DTSC were of central importance to that litigation, and thus that judicial
25 economy and the policies underlying the primary jurisdiction doctrine weigh in favor of a stay until the

---

[1] California Health and Safety Code section 57008 requires the California Environmental Protection Agency, "in cooperation with the Department of Toxic Substances Control, the State Water Resources Control Board, and the Office of Environmental Health Hazard Assessment," to publish a list of screening numbers for specific contaminants. http://oehha.ca.gov/risk/soils091709.html.

DTSC proceedings are completed. *Ibid.* Judge Illston agreed, noting a stay would "allow the parties to proceed with the work plan investigation, the results of which may significantly affect the complexion of this case." *Ibid.* Like the case at bar, the stay was limited and the court retained jurisdiction after DTSC completed its work.

Other judges in the Northern District have reached the same conclusion analyzing primary jurisdiction in other regulatory contexts. Judge Conti stayed an unfair competition action in deference to a local agency's regulation of signage in the city of San Francisco. *Reudy v. Clear Channel Outdoor, Inc.*, 2009 U.S. Dist. LEXIS 39318 (N.D. Cal. Apr. 24, 2009). There, the action was stayed based on primary jurisdiction, with the court observing it did not want to "risk displacing local agencies without first giving them the opportunity to address plaintiffs' contentions." *Id.* at 3. In another example, Judge Rogers stayed a GMO labeling class action based on primary jurisdiction pending review of issues raised by the federal Food and Drug Administration. *Cox v. Gruma Corp.*, 2013 U.S. Dist. LEXIS 80613 (N.D. Cal. June 7, 2013). Judge Rogers ordered a stay, observing that "deference to the FDA's regulatory authority is the appropriate course…[o]therwise, the Court would risk 'usurping the FDA's interpretive authority' and 'undermining, through private litigation, the FDA's considered judgments.'" *Id.* at 6-7.

Other federal circuits and California courts have come to the same conclusion as well. In California, an action was stayed pending completion of CPUC's investigation of issues within the scope of its purview with the court noting it should defer to the agency's expertise. *Pacific Bell v. Superior Court*, 187 Cal. App. 3d 137 (Cal. App. 2d Dist. 1986). The Third Circuit held the doctrine of primary jurisdiction required initial referral of liability issues to the Pennsylvania Public Utility Commission (PPUC) in *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1090 (3rd Cir. 1995). There, the court concluded the referral was appropriate as resolution of a third-party complaint turned upon interpretation and application of the PPUC tariff. *MCI* noted three factors supported initial deference to PPUC: (1) PPUC was the appropriate forum to adjudicate tariff issues; (2) PPUC has special competence to do so; and (3) the need for uniformity and consistency in PPUC policy where the public is concerned. *Id.* at 1105.

### 2. *Burford* and Abstention Based On Judicial Comity

For reasons of judicial comity, a stay also may be appropriate in cases involving complex questions of state law administered by state administrative agencies. *Burford v. Sun Oil Co.* 319 U.S. 315 (1943). The theory is that federal courts should exercise their discretionary power with proper regard for the rightful independence of state government. Abstention, which can include staying an action, is warranted to avoid undermining state administrative processes and attempts to establish a coherent, uniform policy in a particular area. *Id.* at 334 [dismissal required in federal action challenging Texas Railroad Commission order granting permit to drill wells].

The Ninth Circuit's formulation of the *Burford* doctrine requires the following: first that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy. *United States v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001).

In the alternative, a stay is requested under *Burford* and its progeny for the reasons cited above.

### III. CONCLUSION

A stay in this case is proper based on abstention under the primary jurisdiction doctrine and *Burford*. Moreover, it makes sense in that damages are currently indeterminate, making a voluntary resolution of this case difficult and resulting in a needless waste of the resources of the Parties and this Court without such a stay.

Dated: March 3, 2014

MURPHY, PEARSON, BRADLEY & FEENEY, P.C.

By /s/
John P. Girarde
Erik P. Weiss
Attorneys for
IN SOO OH and CHAN IM OH

1  [~~PROPOSED~~] ORDER

2    Pursuant to the stipulation of the parties; the points and authorities cited above; and good cause
3  appearing therefor; the Court stays this action for an initial period of six months until September 30,
4  2014. The parties shall submit a joint status conference statement on or before August 1, 2014
5  advising the Court on all issues including the status of remediation; the results of post-remediation
6  testing; and likely outcomes with DTSC including anticipated site closure. A status conference will be
7  held August ~~25~~ 26, 2014 at 10:00 a.m. at which time the Court and parties will evaluate whether a stay for
8  an additional six months is warranted.

9    PURSUANT TO STIPULATION, IT IS SO ORDERED.

10
11  DATED: March 6, 2014
12
13  *[signature]*
    Honorable Elizabeth D. Laporte
    Chief Magistrate Judge

14
15  EPW.20732514.doc

- 10 -